IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE : | CHAPTER 7 |
| NICHOLSON HOLDINGS, INC. : | |
| DEBTOR(S) : | BANKRUPTCY NO. 12-18169 |

# OPINION IN SUPPORT OF
# ORDER DATED MAY 15, 2013

This Opinion is filed pursuant to Local Bankruptcy Rule 8001-1(b) for the purpose of amplifying the Court's oral bench ruling and Order of May 15, 2013. That Order granted the United States' Trustee's request to convert the case to a Chapter 7 proceeding.

*Background*

On August 29, 2012, the Debtor commenced this proceeding under Chapter 11 of the Bankruptcy Code. The Debtor is a corporation co-owned by William and Jill Nicholson. It owns 26 rental properties and is indebted to 9 different banks.

On April 18, 2013, the United States Trustee ("UST") filed a Motion to Convert or Dismiss the case. The UST's Motion cited as cause for its request the Debtor's failure to file monthly operating reports and to pay quarterly fees. *See* Motion, ¶¶ 14 -17. Hyperion Bank, a secured creditor, filed a joinder to the UST's motion alleging that the Debtor had also failed to account for rents or other collateral. A hearing on the motion was held on May 8, 2013.

At the May 8 hearing, the UST pressed its motion for the reasons stated therein. The Debtor's attorney stated that the filing of reports and payment of fees was untimely because counsel's law partner and the Debtor's accountant were ill. The accountant

apparently had since recovered and counsel asked for an additional two week grace period to file the reports, which were already several <u>months</u> delinquent. Hyperion Bank appeared and joined the UST's Motion stating that it had received no post-petition payments in the case, nor had it consented to use of its cash collateral. The Court declined to give the Debtor two weeks and instead continued the matter for one week.

At the May 15 continued hearing, the UST informed the Court that although the Debtor had filed the monthly reports in question, it did so only the night before the hearing. As a result, the UST stated that he had not had adequate time to review them. As to quarterly fees, the Debtor represented to the Court that they had been sent to the UST on April 23; however, the UST had no record of payment and the Debtor had no evidence that the fees were in fact paid.

More troubling to the Court was the contents of the operating reports, which themselves were incomplete and appeared hastily thrown together. For example, there was no Cash Disbursements Journal included, although one is explicitly required. Instead, there was only a rental property <u>summary</u> which does not, as required, itemize expenditures by date, by payee, by the amount paid, or describe the purpose of each payment. Moreover, the reports reflect that the Debtor took an owner's draw for each of the 3 months of the first quarter ($1250, $1200, $1012). While potentially permissible, applicable local bankruptcy rules of procedure require the Debtor to notify its creditors within a certain period of time that officers or principals will continue to be paid and by how much. *See* L.B.R. 4002-1(requiring that such notice be provided within 45 days of the petition date). The docket reflects that no such notice was given.

Moving to specific expenditures, as reflected on the attached bank statements, the Court had serious concerns regarding the Debtor's use of its Debtor-in-Possession account. In January a $1000 purchase was made at Best Buy, an electronics/appliance store. The Debtor gave no explanation for this purchase. In February there was a $155 debit charge for the Methacton Baseball Association. Similarly, no explanation was offered. In March the Debtor purchased 4 airplane tickets to Minnesota totaling $1000. As the Debtor is in the local real estate rental business, the Court is highly skeptical as to this charge.

Worse yet is what appears under the subheading "Other Withdrawals." Hyperion Bank's counsel noted that while the bank had not been paid anything, the bank statements reflect that the Debtor's principal had been withdrawing substantial sums from the operating account. In January and March, the statements respectively reflect that $1250 and $6,600.37 were withdrawn. The Court specifically witnessed, and noted for the record at this point in the hearing, that when the Debtor's counsel turned to his client with a plainly quizzical expression as to what these withdrawals were for, the Debtor's principal simply shrugged his shoulders. The Court construes this demonstrative evidence as an admission that patently inappropriate charges and withdrawals were made.

Sufficiently alarmed, the Court specifically asked Debtor's counsel if he wished to make a record on behalf of his client, and presumably, explain the suspicious charges and withdrawals. Counsel declined to do so, and instead argued that the Chapter 11 case should nevertheless go forward because no meeting of creditors had yet been held. *See*

Transcript of Hearing, 5/15/2013, 1:43:47-55. The creditors meeting had no relevance to the issue *sub judice* and the Court considered it to be a "red herring," argument. The fact that a creditors meeting was not convened in the Chapter 11 case did not excuse the Debtor from its fiduciary responsibilities and obligations as a Debtor-in-Possession. There will be a creditors meeting in the converted case. Section 348 of the Code provides that "conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief…" 11 U.S.C. § 348(a). Section 341, in turn, provides that "within a reasonable time after the order for relief in a case under this title, the United States trustee shall convene and preside at a meeting of creditors." 11 U.S.C. § 341(a). Counsel can expect that the UST will convene a creditors meeting in this proceeding. *See In re Quillen*, 408 B.R. 601, 605 (Bkrtcy.D.Md.2009) (explaining that meeting of creditors in converted proceeding is a separate, distinct and robust meeting).

*Standard for Conversion*

Again, however, the status of the creditors' meeting had nothing to do with whether cause existed to dismiss or convert this case. Cause is the touchstone and constitutes grounds sufficient to convert or dismiss a Chapter 11 case: "[O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1). That section further defines "cause" to

include:

>(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>
>(B) gross mismanagement of the estate;
>…
>(D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
>…
>(F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
>…
>(K) failure to pay any fees or charges required under chapter 123 of title 28;

11 U.S.C. § 1112(b)(4)

If this case involved nothing more than the albeit significantly tardy filing of reports and payment of fees, the Court might have been reluctant to convert the case. But what was revealed in the (incomplete) reports, and the Court proceedings, went well beyond minor lapses that prejudiced creditors generally, and at least one of the banks in particular. Hyperion Bank asserted a security interest in the rents generated on certain of the Debtor's properties. The Bank's assignment of rents made the rents cash collateral. As such, they could not be used by the Debtor without the Bank's consent or this Court's authorization. The Debtor had neither, yet disregarded that fact.

And as to the overall creditor body, there is highly probative evidence of defalcation. The Debtor's unexplained use of its DIP account to buy an array of items which appear unrelated to the debtor's business (e.g., Best Buy, WAWA, plane tickets) is gross mismanagement of the highest order. These were not inconsequential amounts. For example, by withdrawing $1250 in January and $6600 in March, the Debtor's

5

principal left the company with negative cash flow for those two months. Incredibly, he never even tried to explain what he did with the money. The latter fact, in particular, made it extremely difficult for the Court to give Debtor the benefit of any doubt as to the legitimacy of either the charges which appeared non-business related, or the cash withdrawals.

In sum, the record evidence overwhelmingly revealed that cause to convert the Debtor's case existed under Subsections (A),(B),(D),(F) and (K) of Bankruptcy Code Section 1112(b)(1). As a consequence, the court concluded, without hesitancy, that it would clearly be in the best interests of the creditors of this estate if the Debtor were removed from possession and the case converted to Chapter 7.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated: June 5, 2013

George Conway, Esquire
Office of the United States Trustee
833 Chestnut Street
Suite 500
Philadelphia PA 19106

Aaron S. Applebaum, Esquire
McELROY DEUTSCH, MULVANEY &
CARPENTER, LLP
1617 JFK Blvd., Suite 1500
Philadelphia, PA 19103

Gregory R. Noonan, Esquire
Walfish & Noonan, LLC
528 DeKalb Street
Norristown, PA 19401

Edward J. DiDonato, Esquire
FOX ROTHSCHILD LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103

Terry P. Dershaw
DERSHAW LAW OFFICES
P.O. Box 556
Warminster, PA 18974-0632

Nancy Mulvehill, Courtroom Deputy to Judge Raslavich